JUDGE ENGELMAYER   12 CIV 5367

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------X        Index No.

AUGUST SCOTCH-MARMO,

                                        Plaintiff,        **COMPLAINT**

-against-        **JURY TRIAL
                 DEMANDED**

THE CITY OF NEW YORK, POLICE OFFICER
HERIBERT CRUZ (NYPD) SHIELD #26261,
POLICE OFFICER ELLIOT ZINSTEIN
(NYPD) SHIELD #03152, AND NYPD POLICE
OFFICERS JOHN DOE #1-10 (THE NAME
JOHN DOE BEING FICTITIOUS, AS THE TRUE
NAME(S) IS/ARE PRESENTLY UNKNOWN),

                                        Defendants,

----------------------------------------------------------------X

        The Plaintiff, complaining by his attorney, ANDREW L. HOFFMAN, ESQ., respectfully

shows to this Court and alleges:

                                **INTRODUCTION**

1.    This is a civil rights action arising from the unlawful arrest and imprisonment of August

      Scotch-Marmo whom police arrested after he exercised his First Amendment right to

      openly record their public activities with his cell phone video camera.

2.    Mr. Scotch-Marmo observed New York City police officers behaving in an abusive and

      belligerent manner toward a group of young people outside of a Wendy's restaurant

      located at 3939 Broadway, New York, New York 10032.

3.  Defendant officers admit in their Criminal Complaint—and it is likewise apparent from the cell phone video camera footage—that the arrest was in direct response to Mr.Scotch-Marmo's filming activities.

4.  Documenting police conduct in public is an expressive activity protected by the First Amendment.  Criminal charges were pending against Mr. Scotch-Marmo for three months until they were finally adjourned in contemplation of dismissal.

5.  The City of New York is being sued for failing to properly train New York police officers that they cannot arrest people for openly making video recordings of their conduct in public.

6.  The City also failed to supervise and discipline New York police officers to assure that they followed the law in making arrests relative to pretextual charges.  The City permitted officers to feel that they could commit multiple acts of misconduct without fear or punishment.


## JURISDICTION

7.  Jurisdiction is founded upon the existence of a Federal Question.

8.  This is an action to redress the deprivation under color of statute, ordinance, regulation, custom, or usage of rights, privileges, and immunities secured to the Plaintiff by the First, Fourth and Fourteenth Amendments to the Constitution of the United States pursuant to 42 U.S.C. Sections 1983 and 1988, and arising under the law and statutes of the State of New York.

9.  Jurisdiction is founded upon 28 U.S.C. Sections 1331, 1343(3) and 1343(4), this being an action authorized by law to redress the deprivation under the color of law, statute,

ordinance, regulation, custom and usage of rights, privileges and immunities secured to

Plaintiffs by the First, Fourth and Fourteenth Amendments to the Constitution of the

United States.

## VENUE

10.   Venue lies in this District pursuant to 28 U.S.C.A. Section 1391(b) (2) since the events

giving rise to the claim occurred in the Southern District.

## PARTIES

11.   Plaintiff AUGUST SCOTCH-MARMO is a resident of New York, New York.

12.   Prior to the incident set forth in the instant complaint, Mr. Scotch-Marmo, who was 18

on the date of the incident, had never been arrested and had no criminal record of any

kind.

13.   Upon information and belief, at all times hereinafter mentioned, the Defendant, CITY

OF NEW YORK was and still is a municipal corporation duly organized and existing

under and by virtue of the laws of the State of New York, and that at all times relevant all

Defendant officers were acting for, upon, and in furtherance of the business of their

employer and within the scope of their employment.

14.   Upon information and belief, at all times hereinafter mentioned, the Defendant, CITY

OF NEW YORK, its agents, servants, and employees, operated, maintained and

controlled the NEW YORK CITY POLICE DEPARTMENT, including all the police

officers thereof.

15.  Upon information and belief, at all times hereinafter mentioned, Defendant POLICE
     OFFICERS HERIBERT CRUZ, ELLIOT ZINSTEIN, and POLICE OFFICER(S) DOE
     #1-10 were employed by the Defendant, CITY OF NEW YORK, as members of its
     police department.

16.  Upon information and belief, at all times hereinafter mentioned, all Defendant Police
     Officers, be they known or unknown, worked out of the 33rd Precinct in Manhattan, in
     the City of New York.

17.  The NEW YORK CITY POLICE DEPARTMENT is a local governmental agency, duly
     formed and operating under and by virtue of the Laws and Constitution of the State of
     New York and the POLICE CHIEF THE NEW YORK CITY POLICE DEPARTMENT
     is responsible for the policies, practices, and customs of the NEW YORK CITY POLICE
     DEPARTMENT as well as the hiring, screening, training, supervising, controlling and
     disciplining of its police officers and civilian employees, and is the final decision maker
     for that agency.

18.  This action arises under the United States Constitution, particularly under provisions of
     the First, Fourth and Fourteenth Amendments of the Constitution of the United States,
     and under federal law, particularly the Civil Rights Act, Title 42 of the United States
     Code, Section 1983, and the rights guaranteed by the Constitution and laws of the State
     of New York.

19.  Individual Defendants in this action are being sued in both their individual and official
     capacities.

## STATEMENT OF FACTS

20. On November 6, 2011, at about 1:30 AM, Plaintiff August Scotch-Marmo and a friend were having a bite to eat inside the Wendy's restaurant at 3939 Broadway in Manhattan, New York, when a terrible argument broke out between an unknown customer and a Wendy's employee who was tending the register.

21. The argument turned violent when the unknown customer deliberately threw a bowl of hot chili at the employee and was joined by several companions who appeared to be poised for a violent altercation.

22. Although they desired to exit right away, Mr. Scotch-Marmo and his friend did not leave Wendy's until these individuals left because they felt it was unsafe to draw undue attention.

23. But as soon as the chili-throwing customer and his companions departed, Mr. Scotch-Marmo and his friend quickly got up from their table and exited the restaurant.

24. Outside the restaurant, Mr. Scotch-Marmo and his friend began to walk towards Mr. Scotch-Marmo's home when they shortly encountered a small group of other young people who were socializing and otherwise peacefully assembled there, some of whom were known to Mr. Scotch-Marmo's friend.

25. Moments later, an NYPD squad car sped up to the restaurant carrying Defendant Officers Cruz and Zinstein.

26. The Defendant officers abruptly exited their vehicle and began aggressively pushing through the small group.

27.  There was no indication that any of the young people outside of Wendy's were in any way affiliated with the individual who had thrown chili on the Wendy's employee, nor did the Defendant officers indicate they were investigating said crime.

28.  Nevertheless, the Defendant officers continued to push through the crowd, demanding identification from random unsuspecting individuals, and generally bullying everyone around them.

29.  This prompted Mr. Scotch-Marmo to pull out his cell phone video camera to record what he perceived to be blatant misconduct on the part of the Defendant officers.

30.  When Defendant Officer Cruz became aware that Mr. Scotch-Marmo was filming him, he shouted to Mr. Scotch-Marmo, from approximately 20 feet away, to put the camera phone down.  However, Defendant Officer Zinstein stated that it was okay for Mr. Scotch-Marmo to film as long as he stayed on the corner.

31.  Mr. Scotch-Marmo obeyed Defendant Zinstein's instruction, even withdrawing several steps more.

32.  Suddenly, Defendant Cruz charged at Mr. Scotch-Marmo, placing him in fear of imminent and substantial bodily harm.

33.  In response, Mr. Scotch-Marmo instinctively ran several feet away, chased by Defendant Cruz, but then came to a stop and put his hands up in the air, indicating that he was not offering any resistance.  This was so even though neither Defendant Cruz nor any other officer instructed Mr. Scotch-Marmo to stop, or threatened arrest.

34.  As Mr. Scotch-Marmo raised his hands in the air, a van full of NYPD personnel rolled up, exited the vehicle, and along with Defendant Cruz, violently descended upon Mr. Scotch-Marmo.

35.  At least five officers proceeded to hurl Mr. Scotch-Marmo into a chain link fence, and brutally force him to the ground face first.

36.  At no time did Mr. Scotch-Marmo make any effort to resist arrest—nor was he ever charged with resisting arrest.

37.  Amidst the melee, while Mr. Scotch-Marmo was still on the ground, one of the officers saw fit to shove his knee painfully into Mr. Scotch-Marmo's back.  Defendant Cruz then handcuffed Mr. Scotch-Marmo, causing him significant pain, as the cuffs were so tight that his circulation was inhibited and marks were left on his wrists.

38.  After Mr. Scotch-Marmo was handcuffed, but while he was still lying on his stomach with no ability to move, Defendant Cruz deliberately and without provocation punched Mr. Scotch-Marmo in the mouth with a closed fist, inflicting substantial pain, and causing his lip to swell and bleed.

39.  When Mr. Scotch-Marmo was raised to his feet and pushed toward the squad car, he informed Defendant Cruz that his handcuffs were too tight and were cutting off his circulation.  In response, Defendant Cruz tightened the handcuffs.

40.  Defendants Cruz and Zinstein then threw Mr. Scotch-Marmo into the back of a squad car in preparation for his transport to the 33rd Precinct.

41.  Arresting officers Cruz and Zinstein never Mirandized Mr. Scotch-Marmo, nor did they tell him what he was being charged with, despite his repeatedly asking.  In fact, during the ride to the precinct, Defendant Cruz's repeated response to Mr. Scotch-Marmo asking what he did wrong was "Shut the fuck up!"

42. When Mr. Scotch-Marmo arrived at the 33rd Precinct at approximately 2AM, he was forced to continue wearing the overly tightened handcuffs for an additional 15 minutes, and received no medical attention for his bloody lip despite continuing to ask for it.

43. At the precinct, in front of Defendant Cruz's superior, Mr. Scotch-Marmo asked Defendant Cruz, "Did you see what you did to my lip?"  In response, Cruz's superior repeatedly shouted at Mr. Scotch-Marmo, "Shut the fuck up!" and Defendant Cruz replied, in sum and substance, "Your lip looks nice.  Keep talking and I'll do it again."

44. When Mr. Scotch-Marmo inquired as to whether Defendant Cruz was threatening him, Defendant Cruz just looked at him and smiled.

45. Around this time, Defendant Cruz finally informed Mr. Scotch-Marmo that he had been arrested for disorderly conduct.  Understanding this charge to be a citation, Mr. Scotch-Marmo asked, "Why am I here then?"  To which Cruz replied, "You don't know everything."

46. When Mr. Scotch-Marmo requested that he be allowed to call his father who works as an attorney at Bingham McCutchen LLP, Defendant Cruz became especially indignant, stating in sum and substance, "I don't give a shit about your rights."

47. Finally, after approximately one hour, Mr. Scotch-Marmo was allowed to call his father, Stephen Scotch-Marmo, Esq., who immediately came to the Precinct to find out what had happened.

48. When Attorney Scotch-Marmo and his wife arrived at the Precinct, they were met by Defendant Officer Cruz who told him that August Scotch-Marmo was being charged with Obstructing Government Administration in the Second Degree.

49. Strangely, Officer Cruz seemed almost apologetic that Mr. Scotch-Marmo was being charged with anything.

50. Meanwhile, after approximately four hours at the Precinct, August Scotch-Marmo inquired as to whether he might use the restroom, but the guards simply ignored him.

51. When Mr. Scotch-Marmo persisted, Defendant Cruz finally escorted him to a small unisex bathroom near the cell area, but insisted on leaving the door wide open, where Mr. Scotch-Marmo could be viewed by random onlookers of both genders, apparently hoping to inflict maximum humiliation.

52. All other prisoners had been allowed to close the door, as there was a viewing window. When Mr. Scotch-Marmo pointed this out, Cruz replied, "You're not a cop. You're a piece of shit and you don't know anything."

53. Unable to use the bathroom under the circumstances, Mr. Scotch-Marmo was returned to his cell and not given another opportunity to use the restroom until approximately 4PM that same day, some 13 hours after his arrest.

54. At approximately 6PM, Mr. Scotch-Marmo was transferred to Central Booking, where he was forced to share a cell with approximately 30 other inmates, many of whom appeared mentally unstable and/or exhibited frightening violent tendencies.

55. One such inmate, who had especially long hair, moved his bowels in the cell latrine and proceeded to wipe himself with his own hair.

56. The cell area itself was inhabited by roaches and wreaked of body odor, excrement, and rotten food.

57. Every moment Mr. Scotch-Marmo spent wrongfully incarcerated was terrifying, humiliating, and traumatic.

58.  Mr. Scotch-Marmo's experience was all the more traumatic given that he was already suffering with a diagnosed anxiety disorder, and was being medically treated for the same.

59.  Approximately 24 hours into his wrongful incarceration, Mr. Scotch-Marmo was overcome by the need to sleep; unfortunately, there were so many inmates in his Central Booking cell, there was no visible floor space or available benches upon which to sit or lie down.

60.  Eventually, Mr. Scotch-Marmo curled up in the empty and dirty space under a bench and closed his eyes; shortly thereafter, Mr. Scotch-Marmo was awakened by a guard deliberately shoving a dirty mop in his face under the pretext that he was cleaning the floor.

61.  Mr. Scotch-Marmo made no further attempts to sleep for the duration of his approximately 34-hour wrongful incarceration.

62.  Around 11pm on November 6, 2011, Mr. Scotch-Marmo's parents were informed by the arraignment clerk that the top charge their son was facing had inexplicably been elevated to Second Degree Assault, a felony.

63.  However, when Mr. Scotch-Marmo's Criminal Complaint was actually released, the Second Degree Assault charge had been downgraded to Assault in the Third Degree.

64.  Notably, the Criminal Complaint, for which Defendant Officer Cruz served as the deponent, made elaborate and wildly false allegations that August Scotch-Marmo had somehow actively prevented the issuance of a summons to another party for Disorderly Conduct outside of Wendy's, an allegation completely unsupported by the cell phone camera footage captured by Mr. Scotch-Marmo.

65.  In addition, the Criminal Complaint falsely alleged that August Scotch-Marmo "pushed" Defendant Cruz's hand and then knocked Defendant Officer Zinstein down, injuring the officer and causing "substantial pain."

66.  As the Criminal Complaint made plain, Defendant Officers Cruz and Zinstein acted in concert and with willful indifference to the rights of August Scotch-Marmo by falsifying evidence in an effort to justify the false and malicious arrest of the Plaintiff.

67.  On November 7, at approximately 11AM, when Mr. Scotch-Marmo appeared at his arraignment, the presiding judged swiftly released him on his own recognizance, and into the arms of his concerned parents and adult sister, despite the Prosecution's baseless and malicious request that bail be set.

68.  On February 2, 2012, some three months after Mr. Scotch-Marmo's harrowing ordeal had begun, his entire case was adjourned in contemplation of dismissal.

69.  As a direct result of the aforementioned false arrest and incarceration, Mr. Scotch-Marmo's diagnosed anxiety condition has significantly worsened.

70.  The frequency of Mr. Scotch-Marmo's anxiety attacks have increased, and he began having nightmares accompanied by night sweats, necessitating an increased dosage of his anti-anxiety medication.

71.  To this day, Mr. Scotch-Marmo becomes especially fearful and anxious whenever he comes into even the most casual and peripheral contact with New York City police officers.

## AS AND FOR THE FIRST CAUSE OF ACTION
## ON BEHALF OF THE PLAINTIFF AGAINST
## ALL DEFENDANTS

### Violation of Constitutional Rights Under Color of State Law

### —Violation of First Amendment Rights—

72.  Plaintiff Incorporates by reference and realleges each and every allegation stated in

  paragraphs 1through 71.

73.  Defendants, acting in concert, arrested the Plaintiff.

74.  Defendants deprived Plaintiff of his well-established rights to freedom of speech under

  the First Amendment to the United States Constitution, and to freedom from arrest

  without probable cause under the Fourth Amendment to the United States Constitution.

75.  Defendants' actions were motivated by bad faith and malice, and/or deliberate

  indifference to the rights of Mr. Scotch-Marmo.

76.  This conduct on the part of Defendants also represents a violation of 42 U.S.C. § 1983,

  given that said actions were undertaken under color of state law.

77.  As a direct and proximate result, the Plaintiff was substantially injured.

## AS AND FOR THE SECOND CAUSE OF ACTION
## ON BEHALF OF THE PLAINTIFF AGAINST ALL DEFENDANTS

### Violation of Constitutional Rights Under Color of State Law

### -False Arrest-

78.  Plaintiff incorporates by reference and realleges each and every allegation stated in

  Paragraphs 1 through 77.

79. The Fourth Amendment of the United States Constitution protects citizens from unreasonable searches and seizures by government officials, and prohibits law enforcement officers from arresting and detaining individuals in the absence of appropriate authorization. The Fourth Amendment also precludes police officers from conducting arrests in the absence of probable cause to believe that a crime has been committed.

80. The actions of Defendants detailed above violated August Scotch-Marmo's rights under the United States Constitution. Given the total absence of any legal justification for Defendant officers' blatant manufacturing of evidence, it was not objectively reasonable for the Defendant officers to arrest Mr. Scotch-Marmo for anything on November 6, 2011.

81. Defendants' actions were motivated by bad faith and malice, and/or deliberate indifference to the rights of Mr. Scotch-Marmo.

82. This conduct on the part of Defendants also represents a violation of 42 U.S.C. § 1983, given that said actions were undertaken under color of state law.

83. As a direct and proximate result of the unconstitutional acts described above, Plaintiff August Scotch-Marmo has been substantially injured.

## AS AND FOR THE THIRD CAUSE OF ACTION
## ON BEHALF OF THE PLAINTIFF AGAINST ALL DEFENDANTS

### Violation of Constitutional Rights Under Color of State Law

### -Excessive Force-

84.  Plaintiff incorporates by reference and realleges each and every allegation stated in
     Paragraphs 1 through 83.

85.  Defendants used excessive force against the Plaintiff by hurling him into a chain link
     fence; by tackling Plaintiff to the ground; by shoving a knee into Plaintiff's back; by
     handcuffing Plaintiff; by deliberately applying the handcuffs with excessive and painful
     tightness; by requiring Plaintiff to remain in handcuffs for an excessive period of time
     while he posed no threat; and by punching Plaintiff in the mouth while handcuffed and
     posing no threat.

86.  Any force used against the Plaintiff was excessive because he had not committed a crime
     and there was no probable cause to believe Plaintiff had committed a crime.

87.  Defendants' actions were motivated by bad faith and malice, and/or deliberate
     indifference to the rights of Mr. Scotch-Marmo.

88.  All Defendants are liable for said damage and injuries pursuant to the Fourth
     Amendment of the United States Constitution and 42 U.S.C. § 1983, given that said
     actions were undertaken under color of state law.

89.  As a direct and proximate result of the unconstitutional acts described above, Plaintiff
     August Scotch-Marmo was substantially injured.

## AS AND FOR THE FOURTH CAUSE OF ACTION
## ON BEHALF OF THE PLAINTIFF AGAINST ALL DEFENDANTS

**Violation of Constitutional Rights Under Color of State Law**

**-Malicious Abuse of Process-**

90.  Plaintiff incorporates by reference and realleges each and every allegation stated in Paragraphs 1 through 89.

91.  Defendants issued legal process against the Plaintiff.

92.  Defendants issued legal process against the Plaintiff to obtain a collateral objective outside the legitimate ends of the legal process.

93.  Defendants acted with intent to do harm to the Plaintiff, without excuse or justification.

94.  This conduct on the part of Defendants also represents a violation of 42 U.S.C. § 1983, given that said actions were undertaken under color of state law.

95.  As a direct and proximate result of the unconstitutional acts described above, Plaintiff August Scotch-Marmo has been substantially injured.

## AS AND FOR THE FIFTH CAUSE OF ACTION
## ON BEHALF OF THE PLAINTIFF AGAINST ALL DEFENDANTS

**Violation of Constitutional Rights Under Color of State Law**

**-Failure to Intercede-**

96.  Plaintiff incorporates by reference and realleges each and every allegation stated in Paragraphs 1 through 95.

97.  The Fourth Amendment of the United States Constitution protects citizens from unreasonable searches and seizures by government officials, and prohibits law enforcement officers from arresting and detaining individuals in the absence of

appropriate authorization.  The Fourth Amendment also precludes police officers from conducting arrests in the absence of probable cause to believe that a crime has been committed.

98.  The actions of Defendants detailed above violated August Scotch-Marmo's rights under the United States Constitution.  It is widely recognized that all law enforcement officials have an affirmative duty to intervene to protect the clearly established constitutional rights of citizens from infringement by other law enforcement officers in their presence.

99.  At all times relevant herein, the right to be free from deprivations of liberty interests caused by unjustifiable criminal charges and procedures, as well as the right to be free from restraints on speech and bodily movement, were clearly established constitutional rights that a reasonable person would have known.

100.  Defendants' actions were motivated by bad faith and malice, and/or deliberate indifference to the rights of Mr. Scotch-Marmo.

101.  This conduct on the part of Defendants also represents a violation of 42 U.S.C. § 1983, given that said actions were undertaken under color of state law.

102.  As a direct and proximate result of the unconstitutional acts described above, Plaintiff Omar Scotch-Marmo has been irreparably injured.


## AS AND FOR THE SIXTH CAUSE OF ACTION
## ON BEHALF OF THE PLAINTIFF AGAINST ALL DEFENDANTS

### Violation of Constitutional Rights Under Color of State Law

### -Conspiracy to Violate Plaintiffs' Civil Rights-

103.  Plaintiff incorporates by reference and realleges each and every allegation stated in Paragraphs 1 through 102.

104. Defendant officers acting under color of state law in both their individual capacities and as agents for the City of New York, conspired together, reached a mutual understanding, and acted in concert to undertake a course of conduct violative of Plaintiffs' civil rights by:

    a.  Agreeing to intentionally fabricate a legal justification for the unauthorized arrest of the Plaintiff.

    b.  Agreeing to deliberately and maliciously fabricate evidence against the Plaintiff.

    c.  Agreeing to falsely arrest and imprison the Plaintiff as aforedescribed.

    d.  Agreeing to contrive false charges and otherwise engage in a malicious abuse of process and acts of excessive force against the Plaintiff, as aforedescribed.

105. This conduct on the part of Defendants also represents a violation of 42 U.S.C. § 1983, given that said actions were undertaken under color of state law.

106. Defendants' actions were motivated by bad faith, malice, and/or deliberate indifference to the rights of Mr. Scotch-Marmo.

107. As a direct and proximate result of the unconstitutional acts described above, the Plaintiff has been substantially injured.

## AS AND FOR THE SEVENTH CAUSE OF ACTION
## ON BEHALF OF THE PLAINTIFF AGAINST ALL DEFENDANTS

**Violation of Constitutional Rights Under Color of State Law**

**-Implementation of Municipal Policies, Practices, and Customs that Directly Violate**

**Constitutional Rights, Failure to Implement Municipal Policies to Avoid Constitutional**

**Deprivations and Failure to Train and Supervise Employees**

**Under Color of State Law-**

108.  Plaintiffs incorporate by reference and reallege each and every allegation stated in

   Paragraphs 1 through 107.

109.  Upon information and belief, Defendant City of New York and Doe #1-10 who were

   supervisors and final decision makers, as a matter of policy, practice, and custom, have

   acted with a callous, reckless and deliberate indifference to the Plaintiff's constitutional

   rights and laws of the United States, in that they failed to adequately discipline, train,

   supervise or otherwise direct police officers concerning the rights of citizens, and not

   making arrests without probable cause to believe a crime has been committed.

110.  In the alternative, and upon information and belief, Defendants City of New York and

   Doe #1-10 instituted policies addressing the topics listed above, but through deliberate

   indifference to the same culture of gross negligence, carelessness, and malice displayed

   by 33rd Precinct officers and/or improperly pressuring officers to meet certain arrest

   quotas regardless of whether probable cause was present, demonstrated a willful

   indifference to the constitutional rights of the Plaintiff.

111.  Defendant(s) also, upon information and belief, demonstrated deliberate indifference to

   the rights of those arrested in the City of New York by failing to adequately hire, screen,

   train, and supervise officers at the 33rd Precinct.

112. The policies, procedures, customs and practices of the above-referenced Defendants violated the Constitutional rights of the Plaintiff under the First and Fourth Amendments of the United States Constitution.

113. This conduct on the part of Defendants also represents a violation of 42 U.S.C § 1983, given that said actions were undertaken under color of state law.

114. As a direct and proximate result of the unconstitutional acts described above, the Plaintiff has been substantially injured.

## DEMAND FOR PUNITIVE DAMAGES

115. The actions of Defendants described herein were extreme and outrageous, and shock the conscience of a reasonable person. Consequently, an award of punitive damages is appropriate to punish the Defendants for their cruel and uncivilized conduct. The Plaintiff does not seek punitive damages against the City of New York.

## DEMAND FOR TRIAL BY JURY

116. The Plaintiff hereby demands a trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiff August Scotch-Marmo requests that this Honorable Court grant him the following relief:

A. A judgment in favor of the Plaintiff against Defendant officers for compensatory and punitive damages in an amount to be determined by a properly charged jury;

B.  A judgment in favor of the Plaintiff against Defendant City of New York for

compensatory damages in an amount to be determined by a properly charged jury;

C.  A monetary award for attorneys fees and costs of this action, pursuant to 42 U.S.C. §

1988;

D.  Any other relief this Court finds to be just, proper, and equitable.

Dated:  New York, New York                    Respectfully Submitted By:

       July 11, 2012

                                              Andrew L. Hoffman, Esq.
                                              SDNY Bar Code Number: AH2961
                                              The Law Offices of Andrew L. Hoffman, PLLC
                                              Attorney(s) for the Plaintiff
                                              261 Madison Avenue, 12th FL
                                              New York, New York 10016
                                              T:      (212)736-3935
                                              E:      ahoffman@andrewhoffmanlaw.com